GARY W. SWINDELL AND WIFE, LILLIAN R. HARRIS SWINDELL v. THE FEDERAL NATIONAL MORTGAGE ASSOCIATION AND SKYLINE MORTGAGE CORPORATION

No. 8926SC617

(Filed 16 January 1990)

**Usury § 1.1 (NCI3d) — excessive late payment charge — no "interest" — usury penalties not invoked**

The provision in plaintiff's note requiring a 5% late charge did violate N.C.G.S. § 24-10(e) (now N.C.G.S. § 24-10.1) because it exceeded 4% as allowed by the statute; however, this violation did not invoke the usury penalties provided in N.C.G.S. § 24-2, since a late payment charge pursuant to N.C.G.S. § 24-10 is not considered "interest" as that term is used in the usury statute. A violation of N.C.G.S. § 24-10.1 by exceeding the 4% late charge allowed results in forfeiture of the right to collect a late charge on the loan for the balance of the term of the loan.

**Am Jur 2d, Interest and Usury § 182.**

SWINDELL v. FEDERAL NATIONAL MORTGAGE ASSN.

[97 N.C. App. 126 (1990)]

APPEAL by plaintiffs from order entered 3 April 1989 by *Judge Frank W. Snepp* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 5 December 1989.

Plaintiffs-appellants Gary W. Swindell and wife, Lillian R. Harris Swindell were denied their motion for summary judgment and defendants-appellees The Federal National Mortgage Association ("FNMA") and Skyline Mortgage Corporation ("Skyline") were granted their cross-motion for summary judgment.

On 22 March 1985, the plaintiffs executed a Note and Deed of Trust in the original amount of $112,500.00 on a home loan to EPIC Mortgage, Inc. as agent for Community Savings & Loan, Inc. This was an adjustable rate note with an initial interest rate of 10.625%, subject to change on 1 April 1986 and annually thereafter. The Note and Deed of Trust were executed on multistate FNMA Uniform Instrument forms.

Prior to June 1987, Community Savings & Loan, Inc. and EPIC Mortgage, Inc. went into receivership and the plaintiffs-appellants' contract was taken by the FNMA. Skyline became the servicing agent for FNMA on the plaintiffs' mortgage loan contract.

On 14 October 1987, Skyline sent plaintiffs a notice of uncollected late charges. The late charges which were allegedly due applied to the payment due from appellants under the loan on 1 June 1987. The late charge equaled 5% of the principal and interest of the payment due on 1 June 1987.

On or about 6 November 1987, appellants informed defendant Skyline of the North Carolina ceiling of 4% on late payment charges. G.S. 24-10(e) (now G.S. 24-10.1). In response to this information, defendant Skyline advised the plaintiffs on 17 February 1988, that the late payment charge for their loan had been reduced from five percent to four percent to conform to North Carolina law. This reduction in interest was made in accordance with the provisions contained in paragraph six of the plaintiffs' Note:

> 6. LOAN CHARGES: If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit. . . .

SWINDELL v. FEDERAL NATIONAL MORTGAGE ASSN.

[97 N.C. App. 126 (1990)]

Plaintiffs seek to apply the penalty provisions of G.S. Section 24-2, which is invoked upon a finding of usury by "the taking, receiving, reserving or charging a greater rate of interest than permitted by this chapter. . . ."

*Plaintiffs-appellants appeared pro se.*

*Alexander and Brown, by William G. Alexander, for defendants-appellees.*

LEWIS, Judge.

Plaintiffs contend that the initial late charge of five percent violates G.S. Section 24-10(e) (now 24-10.1) and as such would therefore violate G.S. 24-2. G.S. 24-2 imposes a specific penalty for the charging or collecting of usurious interest. We hold this penalty does not apply to G.S. 24-10(e) (now G.S. 24-10.1). G.S. 24-10(e) states:

> (e) Any lender may charge a party to a loan made under G.S. 24-1.1A, a late payment charge on any installment of principal, interest or both in an amount not to exceed four percent (4%) of such installment. The charges authorized by this subsection may not be charged by a lender unless an installment is more than 15 days past due; provided, however, for the purposes of this subsection, a late payment charge may not be charged until an installment is more than 30 days past due where interest on such installment is paid in advance.

While it is true that the plaintiffs' Note did provide for an initial five percent late payment charge, the contract did provide for the reduction of this charge if applicable law held the charges exceeded permissible limits. The parties executed a multi-state adjustable-rate note, a "Fannie Mae" Uniform Instrument. The purpose of such an instrument is to insure that it complies with federal law, North Carolina law, and the laws of every other state. Upon learning of the above statutory limitation, and to conform with paragraph six of their agreements, defendants accordingly reduced the late charge rate to four percent.

We find that the plaintiffs' Note and their assertion of a late charge did violate 24-10(e). However, this violation does not invoke the usury penalties provided in N.C.G.S. 24-2.

G.S. 24-2 states as follows:

**SWINDELL v. FEDERAL NATIONAL MORTGAGE ASSN.**

[97 N.C. App. 126 (1990)]

Penalty for Usury; Corporate bonds may be sold below par. The taking, receiving, reserving or charging a greater rate of interest than permitted by this chapter or other applicable law, either before or after the interest may accrue, when knowingly done, shall be a forfeiture of the entire interest which the note or other evidence of debt carriers with it, or which has been agreed to be paid thereon.

The key word in said statute is "interest." The issue presented is whether a late payment charge pursuant to N.C.G.S. 24-10 is considered "interest." We hold that the legislature did not intend for late charges to be considered interest.

There is a gap in the law relative to the penalty for misuse of G.S. 24-10.1. Though we find the penalties imposed for violation of the usury statute, G.S. 24-2, do not apply here, we do hold that the collection of the late charge would be unfair to the borrower where the lender has erroneously sought to impose a late charge. It is no less important that lenders should be encouraged to determine carefully the applicable law on late charges. If late charges were knowingly assessed in error, they should suffer nevertheless fair penalty. Public policy demands that there be something to discourage wrongful or erroneous assessment of late charges. The violation of G.S. 24-2 as to interest would invoke the penalty of forfeiture of the entire interest on the loan. Since we find G.S. 24-10.1 does not deal with interest but rather late charges, we find the forfeiture of late charges to be consistent. Our holding is consistent with the purpose of the usury statutes. These statutes are for the protection of borrowers against greedy lenders who seek to take unfair advantage of their debtors. However, our usury statutes should not be converted from a shield of protection into a sword of unwarranted expectation.

We hold that the defendants thus have forfeited their right to collect a late charge on this loan for the balance of the term of the loan. They have not, however, forfeited their right to receive principal and interest and abuse would permit foreclosure.

Affirmed in part and reversed in part.

Judges JOHNSON and COZORT concur.